UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| R.K., by next friends, J.K. and R.K., | ) | |
| | ) | |
| | ) | Civil Action No. 5:09-344-JMH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| BOARD OF EDUCATION OF SCOTT COUNTY, KENTUCKY, and PATRICIA PUTTY, Superintendent, Individually and Officially, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

** ** ** ** **

This matter is before the Court on the Motion for Summary Judgment of Defendants Board of Education of Scott County, Kentucky, and Patricia Putty, individually and in her official capacity as Superintendent of the Scott County Schools (collectively "Defendants") [Record No. 26]. Plaintiff R.K., by next friends, J.K. and R.K., has filed a Response in opposition to the motion [Record No. 32], and Defendants have replied [Record No. 33]. This matter is now ripe for review.

**I. FACTUAL BACKGROUND**

Minor Plaintiff R.K. ("Child") was diagnosed with Type 1 diabetes on or around June 23, 2008. He was enrolled in Kindergarten at his neighborhood school, Eastern Elementary School ("EES"), on or around March, 2009, for the 2009-2010 school year.

The Child's parents advised Defendants of his diagnosis, and that the Child would require insulin injections during the day to control his glucose levels. Shortly after the Child's enrollment, the Director of Child and Family Services for the Defendant informed the Child's parents that he would not be able to attend EES because EES did not have an on-site nurse. Defendants advised that the Child could attend either Western Elementary School or Anne Mason Elementary School ("AMES"), the only two schools in the school system with on-site nurses available. Defendants offered transportation to either school. The Child attended kindergarten at AMES during the 2009-2010 school year, and continues to attend AMES for First Grade in the 2010-2011 school year[1].

In December, 2009, the parents advised Defendants that the Child had an insulin pump[2], which obviated the need for daily insulin injections. Over time the Child has become more comfortable with the use of his insulin pump, although the pump

---

[1]    Defendants point out, and this Court agrees, that the Plaintiff has not requested leave to file a supplemental Complaint outlining any additional facts or allegations regarding the 2010-2011 school year, and thus any facts occurring after the 2009-2010 school year are not technically before the Court. However, the Court further notes that, based upon the record, the additional facts relating to the 2010-2011 school year would not change the Court's discussion or the result of this motion.

[2]    The insulin pump, also known as continuous subcutaneous insulin infusion therapy, allows for the subcutaneous injection of insulin. The amount of insulin administered depends on the correct information to be entered into the pump, and continued monitoring to insure that the pump is properly working.

must be monitored and the Child requires some assistance counting carbohydrates. Plaintiff argues that Defendants should allow the Child to attend EES, and that someone other than a nurse could be trained to assist the Child as an accommodation. However, Defendants continue to deny the parents' requests to transfer the Child from AMES to their neighborhood school, EES, on the basis that relevant Kentucky statutes and regulations require that a nurse, or other qualified medical personnel, monitor the Child's insulin pump and assist with carbohydrate calculations. *See* KRS § 156.501; KRS § 156.502. Kentucky law requires that the Defendants delegate nursing functions consistently with the Kentucky Board of Nursing, and the Kentucky Board of Nursing has issued an advisory opinion that nurses should maintain responsibility for monitoring insulin pumps and counting carbohydrates in a school setting. Thus, Defendants argue that the Child must attend a school with a nurse on staff.

Plaintiff alleges that the Defendants refusal to allow Plaintiff to attend his neighborhood school and to provide sufficient accommodations at his neighborhood school constitutes a violation of 42 U.S.C. § 12132, the Americans with Disabilities Act (the "ADA"), 29 U.S.C. § 794, which is commonly referred to as §504 of the Rehabilitation Act, the Fourteenth Amendment and KRS Chapter 344 (the "Kentucky Civil Rights Act").

The facts underlying this claim are not disputed by the

parties. Both parties agree that the Child is not able to use the insulin pump without some assistance. Defendants believe that this requires the Child to attend a school with a nurse on site. Plaintiff argues that he should be allowed to attend his neighborhood school, despite the lack of qualified medical staff. Plaintiff alleges that the Child has been denied his rights because the Defendants required him to attend a school other than his neighborhood school. However, Plaintiff fails to assert that Defendants' accommodations for the Child have prevented him from receiving an adequate and beneficial education, participating in extra-curricular activities, field trips, or advancing to the next grade. The only distinction between the two schools, based upon Plaintiff's arguments, is that EES is his neighborhood school and AMES is not.

## II.  STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a)[3], summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment the court must construe the facts in the light most favorable to the nonmoving

---

[3]     The amendment to Fed. R. Civ. P. 56 became effective on December 1, 2010, pursuant to 28 U.S.C. §2074(a) and Supreme Court Order, dated April 28, 2010, and applies to matters pending on that date "insofar as just and practicable." Accordingly, this Court applied Fed. R. Civ. P. 56., as amended, herein.

party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**III. DISCUSSION**

    **A.  PLAINTIFF'S CLAIMS UNDER ADA, REHABILITATION ACT OF 1973, AND 42 U.S.C. § 1983 ARE NOT SUBJECT TO ADMINISTRATIVE EXHAUSTION REQUIREMENTS OF IDEA, 20 U.S.C. § 1415**

Defendants argue that this Court lacks subject matter jurisdiction over Plaintiff's claims under the ADA, §504 of the Rehabilitation Act, and 42 U.S.C. § 1983 because Plaintiff has failed to meet the administrative exhaustion requirements of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415. Plaintiff does not make a specific claim under the IDEA, but generally alleges in his Complaint that the Child is being denied a "free appropriate and discriminatory [*sic*] free education," based on his disability. [Compl., at ¶ 3, 11, 18, 19, 22, 23]. Plaintiff argues that he is not required to exhaust administrative remedies in this instance because, by their nature, his claims lie outside of the purview of the IDEA. For the reasons that follow, the Court agrees.

The IDEA seeks:

> ...to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment and independent living; [and]
>
> to ensure that the rights of children with disabilities and parents of such children are protected...

20 U.S.C. § 1400(d)(1)(A) & (B).

In order to achieve these goals, the IDEA prescribes certain procedural safeguards, including administrative hearings as provided for under state law. 20 U.S.C. § 1415(f). Only upon exhausting the available administrative process may a party who is dissatisfied with the outcome of those administrative proceedings bring suit in state or federal court. 20 U.S.C. § 1415(i)(2); *see Crocker v. Tenn. Secondary Sch. Athletic Ass'n,* 873 F.2d 933, 935 (6th Cir. 1989). The IDEA clarifies that:

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [subchapter II of the IDEA], the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).

Section 1415 requires the exhaustion of administrative remedies prescribed under the IDEA, even when plaintiffs do not rely on the IDEA as the source of their claims, if their claim is sufficiently related to providing "free appropriate public education" to a disabled child under the IDEA. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 916 (6th Cir. 2000) (*citing N.B. v. Alachua County Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996); *Mrs.*

6

*W. v. Tirozzi*, 832 F.2d 748, 756 (2nd Cir. 1987); *Hayes Through Hayes v. Unified Sch. Dist. No. 3*77, 877 F.2d 809, 813-14 (10th Cir. 1989); *Franklin v. Frid*, 7 F. Supp. 2d 920, 922, 925-26 (W.D. Mich 1998); *W.L.G. v. Houston County Bd. of Educ.*, 975 F.Supp. 1317, 1328 (M.D. Ala. 1997); *Waterman v. Marquette-Alger Intermediate Sch. Dist.*, 739 F.Supp. 361, 364-65 (W.D. Mich. 1990)). As explained by the Seventh Circuit Court of Appeals:

> [U]nder the IDEA, education professionals are supposed to have at least the first crack at formulating a plan to overcome the consequences of educational shortfalls. That the educational problem has consequences outside school . . . can't be enough to avoid the statutory system.

*Charlie F. v. Bd. of Educ. of Skokie Sch. Dist.*, 98 F.3d 989, 992 (7th Cir. 1996). That said, it is common sense that "a disabled child who asserts a constitutional claim having some relationship to education but no nexus to the IDEA is not required to pursue administrative remedies under the IDEA before filing suit under § 1983. . ." or other applicable law. *Franklin*, 7 F.Supp.2d at 925.

In determining whether relief is available under the IDEA (and exhaustion required) where claims are brought pursuant to other statutes, courts have looked to the nature of the wrongs alleged. *See A.P. ex rel. Peterson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, 538 F.Supp.2d 1125 (D. Minn. 2008) (no requirement of exhaustion where § 504 claims for failure to accommodate diabetic student's need for administration of insulin and testing of blood

sugar were not IDEA-type claims and related only tangentially to his education); *Sullivan ex rel. Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F.Supp. 947 (E.D. Cal. 1990) (no requirement of exhaustion under IDEA's predecessor prior to suit for relief under Rehabilitation Act where disabled student sought to be accompanied by service dog at school but did not dispute the adequacy of educational program or aver that service dog was educationally necessary); *Doe ex rel. Doe v. Belleville Pub. Sch. Dist.*, *No. 118*, 672 F.Supp. 342 (S.D. Ill. 1987) (no requirement of exhaustion under IDEA's predecessor prior to suit for relief under Rehabilitation Act where child diagnosed with AIDS and excluded from classroom did not allege that disability affected educational performance and was not in need of "special education" due to medical condition); *compare Eads ex rel. Eads v. Unified Sch. Dist. No. 289, Franklin County, Kan.*, 184 F.Supp.2d 1122, 1125 (D. Kan. 2002) (requiring exhaustion of administrative remedies under IDEA where diabetic student alleged that she was unable to perform adequately and forced to withdraw from public school because defendants failed to provide additional time to complete class assignments, denied access to homework assignments, ridiculed her because of her disability, and displayed open animosity towards her).

The claims herein arise from concerns about how the Child's insulin pump would be monitored, how insulin would be administered

while the Child was at school and who would assist the Child counting carbohydrates. Plaintiff does not allege that the Child's disability, diabetes, impacts his educational process or performance and that he, thus, requires specialized educational services. In other words, Plaintiff's claims are not related to the way that Defendants provide an education to the Child. Rather, he complains of constitutional and statutory violations independent of the IDEA. Accordingly, the Court finds Plaintiff's federal claims under the ADA, the Rehabilitation Act of 1973, and 42 U.S.C. § 1983, are not subject to the IDEA's requirement of exhaustion of administrative remedies, and the Court has subject matter jurisdiction to review those claims at this time.

B. **PLAINTIFF'S CLAIMS FOR VIOLATION OF TITLE II OF THE ADA, § 504 OF THE REHABILITATION ACT, AND THE KENTUCKY CIVIL RIGHTS ACT FAIL.**

Plaintiff avers that Defendants violated Title II of the ADA, § 504 of the Rehabilitation Act, and the Kentucky Civil Rights Act. He complains that Defendants improperly excluded him from participating in the educational process, i.e., denied him an "appropriate discriminatory [sic] free education," at AMES because Defendants failed to provide him with reasonable accommodations for monitoring the use of his insulin pump and administering insulin at his neighborhood school, actions necessary because of his diabetic condition. Based on the evidence presented to the Court, Plaintiff's claims must fail for the reasons which follow.

Title II of the ADA, § 504 of the Rehabilitation Act, and the Kentucky Civil Rights Act, under which Plaintiff brings his claims, all prohibit discrimination on the basis of disability. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subject to discrimination by such an entity." 42 U.S.C. § 12132. Similarly, the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

While the Rehabilitation Act and the ADA are not identical, the Sixth Circuit has held that "because the purpose, scope, and governing standards of the acts are largely the same, cases construing one statute are instructive in construing the other." *Doe v. Woodford County Bd. of Educ.*, 213 F.3d 921, 925 (6th Cir. 2000) (quoting *McPherson v. Mich. High School Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997)) (internal quotation marks omitted). Additionally, the language of the Kentucky Civil Rights Act, KRS 344.010, et seq., mirrors the language of both the ADA and the Rehabilitation Act. *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 520 (6th Cir. 1998). The Kentucky Civil Rights Act seeks to,

among other things, "provide for execution within the state of the policies embodied in . . . the Americans with Disabilities act of 1990 . . . ." KRS 344.020(1)(a). Kentucky state courts treat federal courts decisions regarding the ADA as persuasive authority, and federal courts have analyzed Kentucky Civil Rights Act claims using the same analysis as for claims arising under the ADA and Rehabilitation Act. *See Brohm*, 149 F.3d 517; *Williamson v. Lear Corp.*, Nos. 06-70654 and 05-73093, 2005 WL 3555920 (E.D. Mich. Dec. 28, 2005); *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589 (Ky. 2003); *Noel v. Elk Brand Mfg. Co.*, 53 S.W.3d 95 (Ky. App. 2000). Accordingly, this Court will apply the same analysis to the three claims involving violations of Title II of the ADA, Section 504 of the Rehabilitation Act, and KRS § 344. *See Hallahan v. The Courier Journal*, 138 S.W.3d 699, 705-06 (Ky. App. 2004).

Under the ADA, the Rehabilitation Act, and the Kentucky Civil Rights Act, the elements are of a claim are essentially the same: (1) Plaintiff must be a person with a disability; (2) Plaintiff must be "otherwise qualified" for participation in the relevant program; and (3) Plaintiff must be excluded from participation in or denied the benefits of that program or otherwise subjected to discrimination by reason of his or her disability.[4] For the purposes of this Opinion, the Court assumes – without deciding –

_____

[4]    Under the Rehabilitation Act, there is the additional requirement that the defendant must be an entity receiving federal funds.  That element is uncontested here.

11

that Plaintiff is a person with a disability and is otherwise qualified for participation in the general educational program offered by Defendants. Thus, the Court is concerned with only two questions. First, the Court must decide whether Defendants violated the laws against disability discrimination by failing to accommodate the Child's diabetes and, thus, excluding him from participation in denying him the benefits of the educational program at EES or otherwise subjecting him to discrimination by reason of his diabetes. If the answer to this question is "yes," then the Court must determine whether Defendants acted with sufficiently culpable intent to support an award of damages. *See A.P. ex rel. Peterson v. Anoka-Hennepin Indep. Sch. Dist. No. 11*, 538 F.Supp.2d 1125 (D. Minn. 2008).

A public entity must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making modifications would fundamentally alter the nature of the service, program or activity." 28 C.F.R. § 35.130(b)(7) (regulation promulgated with respect to ADA). The accommodation must not "impose an undue hardship on the operation of [an entity's] program." 28 C.F.R. § 41.53 (regulation promulgated with respect to Rehabilitation Act). The failure to provide reasonable accommodations can constitute disability discrimination. *See Alexander v. Choate,* 469 U.S. 287,

295 (1985); *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 601 (1999); *see also Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007).

The obligation of an educational institution to make modifications in order to accommodate an individual with a disability does not require the institution to make "fundamental" or "substantial" changes to its programs or standards. *Alexander,* 469 U.S. at 300. Nevertheless, "[t]he educational institution has a 'real obligation . . . to seek suitable means of reasonably accommodating a handicapped person and to submit a factual record indicating that it conscientiously carried out this statutory obligation.'" *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 817 (9th Cir. 1999) (*quoting Wynne v. Tufts Univ. Sch. of Med.*, 932 F.2d 19, 25-26 (1st Cir. 1991)). In the instant matter, for the reasons which follow, the Court finds that Defendants sought and provided suitable means of reasonably accommodating the Child's diabetes and have submitted a factual record indicating that it conscientiously carried out its obligation to do so.

Upon notification of the Child's disability, Defendants offered the Child the option of attending a nearby elementary school with a nurse on staff, AMES, so that he might receive the medical services necessary. Defendants declined to station a nurse at EES, as full-time nurses were already in place at two other schools, and in light of the additional cost burden that would be

placed on the school system by employing an additional nurse at EES.

Defendants considered Plaintiff's request that they train EES staff to monitor the Child's blood sugar and administer insulin as necessary but declined to do so because of potential liability under Kentucky regulations which could be construed as prohibiting non-medical personnel from administering injections.

Defendants decision to enroll the Child at AMES, where nursing services would be available, is objectively reasonable in light of the situation. While this is not the Plaintiff's first choice of schools, Plaintiff fails to articulate any reason that AMES is unreasonable or insufficient to provide an adequate education for the Child. "It is well-established... that there is no absolute right to attend a neighborhood school." *McLaughlin v. Holt Pub. Sch. Bd. of Educ*., 320 F.3d 663, 670 (6th Cir. 2003) (construing IDEA) (citing *Murray ex rel. Murray v. Montrose County Sch. Dist.,* 51 F.3d 921, 928-29 (10th Cir. 1995) (IDEA regulations indicate preference not mandate for neighborhood school unless IEP requires placement elsewhere); *Schuldt v. Mankato Indep. Sch. Dist. No. 77,* 937 F.2d 1357, 1361 (8th Cir. 1991) (IDEA did not require school districts to modify particular schools to accommodate disabled children already receiving appropriate public education in another facility); *Barnett ex rel. Barnett v. Fairfax County Sch. Bd.,* 927 F.2d 146, 153 (4th Cir. 1991) (requiring board to provide every

hearing-impaired student with interpreter of choice at base school instead of at mainstreamed but centralized location constituted "substantial modification" not required under Rehabilitation Act)). The Court is not persuaded that either the ADA, § 504, or the Kentucky Civil Rights Act require school districts to modify school programs in order to ensure neighborhood placements when necessary services *and* a free and appropriate education are available at another site within the district. *See Urban by Urban v. Jefferson County Sch. Dist. R-1*, 89 F.3d 720, 727-28 (10th Cir. 1996) (construing IDEA, ADA, and Rehabilitation Act) (citing *Southeastern Cmty. Coll. v. Davis,* 442 U.S. 397, 410-11 (1979); *Barnett,* 927 F.2d 146, 154-55; *Schuldt,* 937 F.2d at 1362-63). Moreover, Plaintiff has not alleged that the educational services at AMES are insufficient. As Plaintiff has not averred that the educational program at AMES is neither free nor appropriate, he cannot demonstrate that Defendants failed to accommodate him or discriminated against him on the basis of disability under the ADA, the Rehabilitation Act, or the Kentucky Civil Rights Act.

Further, even if the Child could demonstrate that Defendants failed to offer him reasonable accommodations, he cannot demonstrate as a matter of law that Defendants acted with sufficiently culpable intent in the event that they did fail to reasonably accommodate the Child's diabetes. In cases under the ADA or § 504 which do not involve challenges to educational

services, courts have held that a plaintiff must show that the defendant acted with "deliberate indifference."[5] *See Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001); *see also Peterson*, 538 F.Supp.2d at 1147.

A defendant is deliberately indifferent only if he acts with "conscious disregard" for a plaintiff's rights." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407 (1997). "A showing of simple or even heightened negligence will not suffice." *Id*. Such conscious disregard exists only if either (1) the defendant actually knows that its actions will violate the plaintiff's rights or (2) such a violation is the "plainly obvious consequence" of the defendants' actions. *See Peterson*, 538 F.Supp.2d at 1147 (*citing Brown*, 520 U.S. at 410).

In the instant matter, Plaintiff fails to demonstrate any evidence of record that Defendants were deliberately indifferent to the Child's rights or that a violation was the obvious consequence of the School District's actions.

There is no evidence that the Plaintiff's requested accommodation suggestions were rejected out of indifference. Instead, they were rejected because of the viable concerns for cost

---

[5] This is distinct from those cases involving the IDEA or challenges to a disabled child's education plan where courts have held that a "bad faith" or "gross misjudgment" standard should apply. *See Monahan v. Nebraska*, 687 F.2d 1164 (8th Cir. 1982); *Campbell v. Bd. of Ed. of Centerline Sch. Dist.*, 58 Fed.Appx. 162, 166-167 (6th Cir. 2003); *S.S. v. Eastern Kentucky Univ.*, 431 F.Supp.2d 718 (E.D. Ky. 2006).

and liability.  Plaintiff has not shown that the Defendants had actual knowledge that its refusal to hire a full-time nurse at EES or train staff members to monitor the Child's insulin pump would violate the Child's rights, or that such a violation was a "plainly obvious consequence" of the Defendants' actions.

## C.   PLAINTIFF'S DUE PROCESS CLAIM ALSO FAILS

Plaintiff also seeks relief pursuant to 42 U.S.C. § 1983 for alleged violations of the Fourteenth Amendment to the United States Constitution, stating that "[t]he Defendant has violated Plaintiff's civil rights by denying him an equal opportunity for an education without due process of law." [Complaint at ¶ 34.]  The Fourteenth Amendment prohibits a state from depriving any person of life, liberty, or property, without due process of law.  Plaintiffs seeking to establish a procedural due process violation must show: (1) that they have been deprived of a protected liberty or property interest; and (2) that the available state procedures were inadequate to compensate for the alleged deprivation.  *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996).  As the Supreme Court explained in *Zinermon v. Burch*, 494 U.S. 113, 126 (1990), "to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate."  The Due Process Clause "grants the aggrieved party the opportunity to present his case and have its merits fairly judged."  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422,

433 (1982).  That opportunity must take place at a "meaningful time and in a meaningful manner." *Id*. at 437 (*quoting Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The defendants argue that Plaintiff fails to state a claim upon which relief may be granted because he has no protected right to a public education.  While education is not a fundamental right, *see Plyler v. Doe*, 457 U.S. 202, 221-23 (1982), in some circumstances a due process claim can be properly stated when a student is deprived of a public education, i.e., barred from attending school.  *See Goss v. Lopez*, 419 U.S. 565 (1975); *see also Long v. Bd. of Educ. of Jefferson County, Ky,* 121 F.Supp.2d 621, 628 (W.D.Ky. 2000).

However, the cases in which due process claims are proper involve very different factual scenarios than that presented here.  Due process is properly alleged in education cases when the child is wholly prohibited from attending school without receiving procedural due process.  There is simply no allegation that the School District took any action to preclude the Child from attending school or that he was precluded from taking advantage of any administrative remedies that may have been available to him in the process of determining an appropriate § 504 plan for his disability.  Plaintiff alleges that the Child was not permitted to attend the school of his choice, but that is not sufficient to raise a due process or equal protection claim under the Fourteenth

18

Amendment.  While the Child may have a protected interest in his education, he cannot and has not demonstrated that the Defendants deprived him of a public education without due process and his claim must fail.

### D.    EQUAL EDUCATION OPPORTUNITIES ACT

Defendants argue that the Equal Education Opportunities Act is inapplicable to Plaintiff's claims because, by its terms, the Act provides that no child shall be denied "equal educational opportunity on account of his or her race, color, sex, or national origin . . . ."   20 U.S.C. § 1703.   Plaintiff argues that a disabled child should be covered to the same extent as any other child who has been discriminated against based on a protected status, and, thus, for a good faith extension of the Equal Education Opportunities Act.   Upon a review of his pleadings, the Court notes that Plaintiff never actually attempted to state a claim under this statute in the Complaint, although 20 U.S.C. § 1706 is mentioned as a basis for jurisdiction.   [*See* Record No. 1, Complaint, at p. 2, first full paragraph.]   Plaintiff has made no effort to amend his Complaint in this regard, an effort which would be futile, in any event, as the language of the statute clearly does not address denial of an equal educational opportunity on the basis of disability.   Thus, to the extent that Plaintiff has averred wrongs under the Equal Educational Opportunities Act, 20 U.S.C. § 1701, et seq., Plaintiff's claims are not cognizable

thereunder and shall be denied.

**E.    DEFENDANT PUTTY IS ENTITLED TO IMMUNITY IN HER INDIVIDUAL CAPACITY.**

"Government officials who perform discretionary functions are generally protected from liability for civil damages as long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Holzemer v. City of Memphis*, 621 F.3d 512, 518-9 (6th Cir. 2010) (quoting *Sallier v. Brooks*, 343 F.3d 868, 878 (6th Cir. 2003)).   The inquiry outlined by the Sixth Circuit requires that the Court determine, "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred.**"**  *Holzemer*, 621 F.3d at 519.   In this case the remaining two prongs of the analysis need not be addressed because Defendants have not violated the Constitution.  *Id.; See also, Feathers v. Aey*, 319 F.3d 843 (6th Cir. 2003); *Pearson v. Callahan*, – U.S. –, 129 S.Ct. 808 (2009). As described above, Plaintiff has failed to demonstrate that the defendants violated the Constitution or laws of the United States, or the Kentucky Civil Rights Act.   Accordingly, this Court shall dismiss the claims against Defendant Putty in her individual capacity.

**IV. CONCLUSION**

For all of the reasons stated above, the Court is of the

opinion that Plaintiff's claims against all Defendants should be dismissed.

Accordingly, and for the foregoing reasons, **IT IS ORDERED** that Defendants' Motion for Summary Judgment [Record No. 26] is **GRANTED**.

This the 14th day of December, 2010.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge