UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| R.K., by next friends, J.K. and R.K., | ) ) ) | |
| Plaintiff, | ) ) | Action No. 5:09-CV-344-JMH |
| v. | ) ) ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| BOARD OF EDUCATION OF SCOTT COUNTY, KENTUCKY | ) ) ) | |
| Defendant. | ) | |

** ** ** ** **

This matter is before the Court on the parties' cross-Motions for Summary Judgment [DE 81, 84]. The matter has been fully briefed by the parties [DE 89, 91, 102, 103] as well as amici curiae, the United States of America [DE 90] and the American Diabetes Association [DE 101]. These motions are now ripe for this Court's review.

**I. Introduction**

This action centers around a diabetic child, R.K., who Defendant the Scott County Board of Education (the "Board") placed in a school other than his neighborhood or "zoned" school because his neighborhood school did not have a full-time nurse on staff. The Board considered it necessary to have a full-time nurse available for R.K. to monitor his glucose levels and administer insulin injections. R.K., through and by his parents

J.K. and R.K., as next friends,[1] brought this suit against the Board, arguing that non-medical personnel should have been trained to monitor R.K. and assist with his insulin injections, thereby allowing R.K. to attend his neighborhood school. Plaintiff argues that by placing him at a location other than his designated neighborhood school, without proper consideration of alternative accommodations at his neighborhood location, the Board violated 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act of 1973), 42 U.S.C. § 12132 (the Americans with Disabilities Act [ADA]), the 14th Amendment to the United States Constitution through 42 U.S.C. § 1983, and Chapter 344.130 of the Kentucky Civil Rights Act.  For the reasons stated herein, this Court finds that Defendant is entitled to summary judgment on Plaintiff's claims under the Rehabilitation Act, the ADA, and the 14th Amendment.  Genuine issues of material fact exist that preclude the granting of summary judgment for either party as to Plaintiff's claim under the Kentucky Civil Rights Act.

## II.    Procedural Background

Plaintiff's original Complaint [DE 1] in this matter, dated October 20, 2009, brought claims against Defendants the Board of Education of Scott County, Kentucky, and Patricia Putty, both

---

[1] Collectively, R.K., through and by his parents J.K. and R.K., as next friends will be referred to as "Plaintiff."  Individual names or initials will be used when referring to R.K. or either of his parents individually.

2

individually and in her official capacity as Superintendent of the Scott County Schools for compensatory damages, as well as declaratory and injunctive relief for violations of Section 504 of the Rehabilitation Act, the ADA, the 14th Amendment to the United States Constitution through 42 U.S.C. § 1983, and KRS Chapter 344.

Following limited discovery by the parties, Defendants moved for summary judgment. [DE 26]. By Memorandum Opinion and Order [DE 39] entered December 15, 2010, this Court entered summary judgment in favor of Defendants on all claims. A subsequent motion for relief from summary judgment under Federal Rule of Civil Procedure 60 [DE 42] was denied by Memorandum Opinion and Order [DE 45] on May 19, 2011. Plaintiff timely appealed from both orders of this Court.

On August 16, 2012, the United States Court of Appeals for the Sixth Circuit affirmed that portion of the summary judgment which had been granted in favor of Defendant Patricia Putty and no further relief was sought by the Plaintiff against Defendant Putty, thereby eliminating her as a party Defendant. [DE 47]. The Sixth Circuit vacated all remaining portions of the judgment and remanded the matter to this Court for further proceedings, including amendment of the Complaint and further discovery. The Opinion suggested particular topics upon which the parties may

have wished to gather additional evidence to assist this Court in considering Plaintiff's claims.

Upon remand, the Amended Complaint [DE 59] included claims relating to the 2010-11 school year and added allegations that the Defendant failed to comply with certain federal regulations. The Amended Complaint asserts claims under Section 504 of the Rehabilitation Act of 1973, the ADA, the 14th Amendment to the United States Constitution through 42 U.S.C. § 1983, and the Kentucky Civil Rights Act. During the renewed discovery period the parties exchanged written discovery and Plaintiff took the deposition of Tony Harrison—a registered nurse and District Health Services Manager for the Scott County Board of Education during much of the relevant time period.[2] These cross-motions for summary judgment followed.

---

[2] The Court notes that the Sixth Circuit panel recommended several actions to the parties, including specific topics and types of discovery that would be helpful for the development of the record and for this Court to review in its additional consideration of the issues presented. Although given this opportunity to amend their pleadings and begin discovery again, from scratch, the parties have not taken advantage. The record before this Court, while slightly more developed than the first time this Court reviewed the matter, is still wanting for pertinent information that the parties did not see fit to address. For instance, while the Sixth Circuit specifically recommended that the parties conduct discovery relevant to the factors considered by Board in its August 2009 decision to assign R.K. to Anne Mason Elementary, and indicated that inquiries on that topic would be "appropriate questions during a deposition of Harrison or others involved in the § 504 Committee . . .," only Harrison's deposition was taken by the parties. Given the importance of the issues raised by this case as expressed by the Amicus parties, it is particularly puzzling to the Court that the parties did not seek the information specifically referenced by the Sixth Circuit as relevant.

## III. Factual Background

R.K. was diagnosed with Type 1 diabetes in June 2008, when he was four (4) years of age. [DE 59 at ID# 452]. In individuals with Type 1 diabetes, the pancreas does not produce sufficient insulin, the hormone that regulates the glucose level in the blood, causing high blood glucose levels. [DE 59 at ID# 452]. Insulin must be injected throughout the day into the body, either through direct injections or an insulin pump, to control glucose levels. [DE 59 at ID# 452].

In March 2009, R.K.'s parents tried to enroll R.K. in kindergarten at his neighborhood school, Eastern Elementary School, located in Scott County, Kentucky. [DE 59 at ID# 453–53; DE 84-4 at ID# 1158]. R.K.'s father, J.K., states in his affidavit that R.K.'s parents chose their home because it was zoned for Eastern Elementary and that R.K.'s friends attended Eastern.[3] [DE 82-2 at ID# 588]. When R.K.'s parents tried to enroll R.K., they informed school personnel of his diagnosis and his need for insulin injections during the day. [DE 59 at ID# 452–53]. They also submitted the "Preventative Health Care Examination Form," filled out by R.K.'s treating physician, which noted that "[f]or [R.K.'s] diabetes, will require

---

[3] His records indicate that R.K. did not have any siblings who attended or had attended Eastern Elementary School during the relevant time periods. [DE 84-5 at ID# 1163, *but see* DE 59 at ID# 453 ("R.K.'s siblings attended Eastern Elementary")]. However, when R.K. was enrolled at Eastern Elementary for his second grade year, his younger sibling began attending kindergarten at Eastern Elementary as well.

frequent finger stick glucose checks **+ nurse** to help with insulin administration." [DE 84-6 at ID# 1166] (emphasis added). At the time of enrollment, R.K.'s insulin was injected through a "pen needle" device. [DE 82-2 at ID# 588]. Insulin dosage is dialed in on the device, which resembles a large ink pen, containing a dial on one end and a needle on the other. Once the needle is inserted in the skin, a button is pressed and insulin is injected into the skin. [DE 82-2 at ID# 588].

J.K., R.K.'s father and a physician practicing internal medicine, states that in April 2009, Jan Sharpe, Director of Child and Family Health Services for Scott County Schools, offered placement for R.K. at Anne Mason or Western Elementary, the only two schools with a full-time nurse available. [DE 82-2 at ID# 588]. R.K.'s parents refused both locations. *Id.*

A 504 meeting[4] was held on August 6, 2009.[5] [DE 82-2 at ID# 589; DE 82-2 at ID# 596]. In attendance were J.K., Jan Sharpe, Martin Hendrix, who was Scott County's 504 Coordinator, as well as the principals and kindergarten teachers from Eastern Elementary and Anne Mason Elementary schools. [DE 82-2 at ID#

---

[4] J.K.'s affidavit appears to take issue with the delay between March 2009 and August 2009 meetings. He states that a 504 meeting was not offered because, as he understood it, the board was not going to hold a 504 meeting until a school was assigned. R.K.'s parents had to make requests for a 504 meeting from the "Kentucky Protection and Advocacy," as well as the superintendent before the referral was made. [DE 82-2 at ID# 589].

[5] J.K.'s affidavit states that the referral meeting took place on July 29, 2009. The documents submitted with J.K.'s affidavit and submitted by the school board indicate that the 504 meeting occurred on August 6, 2009, but the referral was made on July 29, 2009.

589].  According to J.K.'s affidavit, "[n]o medical records were requested or provided, nor any input from R.K.'s endocrinologist, or any information about R.K.'s control of his diabetes (such as his A1C levels or target ranges)."  [DE 82-2 at ID# 589].  J.K. reports that during the meeting, he explained details about R.K.'s diabetes treatment and told the panel that R.K. would be transitioning to a pump in a matter of months. [DE 82-2 at ID# 589].

J.K. confirms that everyone present at the meeting agreed that R.K. met the criteria under § 504 and that a § 504 Individual Accommodation Plan was developed.  [DE 82-2 at ID# 602].  The Plan stated that:

> Self-care is substantially limiting to [R.K.] when considering at this time the regulation of carbohydrate intake, monitoring of sugar levels and monitoring of activity level.  The 504 Committee acknowledges this may change as [R.K.] grows older. In addition, [R.K.] does not self-inject at this time which under self-care is considered substantially limiting.

[DE 84-11 at ID# 1175—76].  The Plan went on to discuss plans for action if R.K.'s blood glucose levels were low, provision of supplies necessary for R.K.'s treatment and advance notice of any food that might be brought in to the school for special occasions.  [DE 84-11 at ID# 1175—77].  Based on J.K.'s affidavit, he asked that R.K. be permitted to attend Eastern Elementary while at the meeting.  In response "Ms. Sharpe stated

that Eastern Elementary placement was not a possibility because an injection for R.K.'s diabetes is solely a nursing function and Scott County did not have a nurse on-site at Eastern Elementary." [DE 82-2 at ID# 590]. According to J.K., he disagreed that injection was "solely a nursing function" and contended that someone could be trained to assist R.K., including some personal friends at Eastern Elementary who had volunteered to help. [DE 82-2 at ID# 591]. Further, he contended that R.K. only needed one shot per day, around lunch, and that a nurse could travel to Eastern Elementary at the lunch hour to assist R.K. [DE 82-2 at ID# 591]. According to J.K., Ms. Sharpe rejected the option of training non-medical personnel at Eastern or allowing a nurse to travel to Eastern at lunch time. [DE 82-2 at ID# 591]. Thus, the 504 meeting on August 9, 2009, concluded without an agreement as to R.K.'s zoned school. [DE 82-2 at ID# 591]. According to J.K., he merely received a fax several days later stating that R.K. was enrolled in Anne Mason Elementary. [DE 82-2 at ID# 591].

By September 2009, R.K. had transitioned to an insulin pump for the administration of insulin. R.K.'s parents renewed their request that he be transferred to his zoned school, Eastern Elementary, now that injections were not required.

Diabetes medical management plans, signed by physicians at the University of Kentucky Pediatric Endocrinology Department,

dated August 10, 2009, and September 18, 2009, are also found in the record. [DE 84-12 at ID# 1179]. Both plans state that "[t]he student must be supervised by an adult with dose administration via pump." [DE 84-12 at ID# 1181; DE 84-12 at ID# 1189]. It does not appear that R.K. had a pump at the time the first Plan was drafted on August 10, 2009.

Nonetheless, a 504 meeting was not held until December 14, 2009. The meeting had no effect upon the location of R.K.'s school. The minutes of the meeting indicate that the nursing staff, Rose Lewis and Tony Harrison, both indicated that they did not believe the task of assisting R.K. with the monitoring of his pump should be delegated to unlicensed individuals. [DE 84-15 at ID# 1200]. According to J.K., "[a]t the close of this 504 meeting, Scott County advised me that it considered any oversight of an insulin pump to be a medical judgment which requires the presence of a licensed nurse." [DE 82-2 at ID# 592].

Since a nurse still had not been assigned to Eastern Elementary, R.K.'s neighborhood school, R.K. remained at Anne Mason Elementary. [DE 82-2 at ID# 592].

A letter provided to the parents on January 5, 2010, from the Scott County District Review Team stated that:

> The review team read and discussed the amended Section 504 Accommodation Plan and minutes taken during the December 14, 2009 meeting. The minutes

reflect concerns noted by District nurses Rose Lewis and Tony Harrison in allowing untrained staff to be responsible for the implementation of the Accommodation Plan. Mr. Harrison stated there is a risk allowing an unlicensed medical person to carry out the plan. Further, Mrs. Lewis noted that although [R.K.] is not receiving an injection, the use of the insulin pump is infusion and she does not recommend delegating this responsibility to another person.

[DE 82-2 at ID# 619]. The review team supported the decision of the committee and again offered that R.K. could attend school at either Anne Mason or Western Elementary, where a full-time nurse would be present. [DE 82-2 at ID# 619]. R.K.'s father owns a business located close to Western Elementary, however, his parents chose to send R.K. to Anne Mason Elementary School. [DE 84-5 at ID# 1164].

Prior to R.K. beginning first grade, another 504 conference was held on July 28, 2010, to update R.K.'s 504 plan. [DE 84-17 at ID# 1204]. The minutes indicate that R.K.'s parents reported that he could monitor the pump independently at that time, but would need assistance calculating carbohydrates. [DE 84-18 at ID# 1208]. It was reported that the pump was "malfunctioning less" and that the malfunction had often been due to a "condition at the site." [DE 84-18 at ID# 1208]. Additionally, the committee was informed that R.K.'s "A1C's have always been consistent."

The Diabetes Management Plan, signed by R.K.'s endocrinologist on July 28, 2010, and received by R.K.'s parent

on July 30, 2010, indicates that the student needs assistance with counting carbohydrates, but that may be done by "any trained layperson. Does <u>not</u> require nurse." [DE 84-20 at ID# 1215] (emphasis in original). Another conference was held on August 6, 2010 to specifically allow consideration of the updated diabetic management plan. [DE 84-21 at ID# 1218]. After consideration of the treating physician's plan, no changes were made to R.K.'s 504 plan. [DE 84-22 at ID# 1221]. On August 6, 2010, the School District informed R.K.'s parents that, after consideration of Nurse Tony Harrison's concerns about delegating supervision to an unlicensed medical person to carry out the 504 plan, and considering R.K.'s "level of independence in the use of his insulin pump, his maturity level, the broad range in sugar levels, and the number of times he requires intervention or treatment during the school day" that the committee continued to believe that nurse supervision was necessary.[6] [DE 84-24 at ID# 1223].

Plaintiff offers evidence that trained personnel at his zoned school could have adequately supervised his insulin injections and carbohydrate calculations. Leslie Scott[7], a Board

---

[6] Plaintiff takes great issue with apparent inconsistencies between Nurse Harrison's March 1, 2010 affidavit and the deposition he gave on August 27, 2013, with respect to statements about R.K.'s level of independence with his diabetes management.

[7] This affiant is referred to as "Dr. Leslie Scott" in the title of her affidavit, by Plaintiff, and the amici. [DE 83-2]. However, there is no indication that she has a doctoral degree in any field in the record. [DE 83-2]. This may merely be an oversight, as her curriculum vitae was not

Certified Nurse Practitioner and Certified Diabetes Educator, provided an affidavit in which she opines that "administering a prescribed insulin dose to a student based on detailed instructions from a child's treating health care provider is safe and does not require professional skill or nursing judgment." [DE 83-2 at ID# 774]. She went on to state that "[w]here there is no full time school nurse present at a school, training unlicensed personnel is the only way to insure that insulin can be administered in a timely manner." [DE 83-2 at ID# 777]. In this case, Ms. Scott opines that R.K. "did not require, in kindergarten or first grade, and does not now require, a licensed nurse in the educational setting." [DE 83-2 at ID# 776—78]. R.K. also submits evidence that he attended a day camp in the summer of 2010, during which he administered his own insulin. [DE 82-2 at ID# 592]. Employees of the day camp were trained to count carbohydrates to assist R.K., but no nurse was present. *Id*. R.K.'s endocrinologist's Diabetes Medical Management Plan, dated July 28, 2010, states that "R.K. is independent in manipulating his pump." Although he continued to need assistance counting carbohydrates, that could be accomplished by a "trained layperson."

Nonetheless, Harrison, a member of the 504 committee in the summer of 2010 did not believe that R.K. was independent in

submitted to the Court. Nonetheless, the Court will refer to her as Ms. Scott until such materials are made available to it.

administering insulin with his pump, as the Diabetes Medical Management Plan would indicate. [DE 83-3 at ID# 841—42]. During that time period, Harrison testified, it was his opinion that R.K. should be assisted by a nurse rather than a trained layperson. [DE 83-3 at ID# 842]. Harrison also testified that he and Rose Lewis, the school nurse at Anne Mason, discussed their efforts to help R.K. transition to full independence. [DE 83-3 at ID# 844]. Harrison further testified that he had not trained any non-medical school personnel to oversee insulin injections, although he had trained family members of diabetic children. [DE 83-3 at ID# 805—06].

The parties have not submitted evidence indicating that the Board had a policy of using the same assignment protocols for all diabetic children without an individual inquiry into their specific needs. The only evidence on this issue appears to be Harrison's testimony that, during the relevant time period, there was at least one older student with an insulin pump who attended a school without a full-time nurse. [DE 83-3 at ID# 843].

Before R.K.'s second grade school year began, he was fully independent in the use of his insulin pump. At that time, Scott

County enrolled R.K. in his neighborhood school, Eastern Elementary.[8] [DE 82-2 at ID# 593].

It is undisputed that R.K. did not have any unique educational needs or require any specialized educational placement and could participate in the standard curriculum at the school. The only issue was ensuring that the staff at the location where R.K. would be enrolled could adequately assist R.K. with his calculations and injections or pump maintenance. While the regular primary programs at Anne Mason Elementary School and Western Elementary School are identical to the program offered at R.K.'s zoned school, Eastern Elementary School, [DE 84-5 at 1164, ¶ 8], R.K.'s father stated that he and his wife purchased their home so that their children could attend Eastern Elementary School and that R.K.'s friends attended school at Eastern Elementary. [DE 83-1 at ID# 739]. Outside of the stated preference by R.K.'s parents for Eastern Elementary School, no distinction between the schools has been offered. There is no evidence that there was any educational benefit or opportunity, be it in the form of the curriculum, extra-curricular activities or other events, that were denied to R.K. by virtue of his enrollment at Anne Mason instead of Eastern Elementary, his zoned school.

---

[8] R.K.'s family moved from the Eastern Elementary district approximately two (2) months after he began second grade there. They moved to an area of the county zoned for the Stamping Ground Elementary school, where R.K. was then enrolled. [DE 84-5 at ID# 1164].

## IV. Standard of Law

Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the factual evidence and all reasonable inferences must be construed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Summers v. Leis,* 368 F.3d 881, 885 (6th Cir. 2004).

This Court's function on a summary judgment motion is not to weigh the evidence, but to decide whether there are genuine issues of material fact for trial. *Anderson,* 477 U.S. at 249; *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *Anderson*, 477 U.S. at 242. A genuine dispute exists on a material fact and, thus, summary judgment is improper if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *Summers*, 368 F.3d at 885.

## V. Analysis

There are three main statutes that provide protection and explicitly afford certain affirmative rights to students with disabilities. The first is the Individuals with Disabilities Education Act (IDEA). To fall within the protections of the

IDEA, the student must have a disability and, as a result of that disability, the student must need special education and related services.  20 U.S.C. § 1401 (3)(A); 34 C.F.R. § 300.8. The second and third statutes are Section 504 of the Rehabilitation Act of 1973 ("Section 504") and Title II of the Americans with Disabilities Act of 1990 ("ADA").  These two statutes share a common definition of a disability as an individual who has "(A) a physical or mental impairment that substantially limits one or more major life activities . . . (B) a record of such impairment; or (C) [is] regarded as having such impairment."  Thus, the eligibility requirements for Section 504 and the ADA are broader than those for the IDEA.  Consequently, a child may qualify for coverage under all three regulatory schemes or, as in R.K.'s case, a child may qualify under Section 504 and the ADA, but not under the IDEA.

The importance of this distinction is twofold.  First, it means that the well-developed body of caselaw applying the IDEA and its procedurally and substantively comprehensive scheme for the identification, evaluation, educational placement, and provision of a free appropriate public education (FAPE) is inapplicable to this case.  Second, this determination has some bearing on whether the administrative exhaustion requirements under IDEA, 20 U.S.C. § 1415(l), apply.

As stated in the Court's prior opinion in this matter, exhaustion is required "when a plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies." *S.E. v. Grant Cnty. Bd. of Educ.*, 544 F.3d 633, 642 (6th Cir. 2008) (internal quotation omitted). The characterization of Plaintiff's claims do not control whether the IDEA exhaustion claims apply and a plaintiff cannot avoid the administrative remedies exhaustion requirement merely by claiming monetary damages, which are unavailable under the IDEA. *Gean v. Hattaway*, 330 F.3d 758, 774 (6th Cir. 2003). Section 1415 requires the exhaustion of administrative remedies prescribed under the IDEA, even when plaintiffs do not rely on the IDEA as the source of their claims, if their claim is sufficiently related to providing "free appropriate public education" to a disabled child under the IDEA. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 916 (6th Cir. 2000) (*citing N.B. v. Alachua County Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996)).

However, where the child's claims have no nexus to the IDEA, as here, exhaustion is not required. *Franklin v. Frid*, 7 F. Supp. 2d 920, 922, 925 (W.D. Mich. 1998). R.K.'s claims are not related to the manner in which his education was provided, but rather to the physical location of his education and the medical services provided at that location. Thus, the issues in

the present matter do not turn, in form or substance, on the IDEA or the procedures available thereunder. Therefore, Plaintiff was not required to exhaust his administrative remedies under the IDEA before availing himself of the Court's jurisdiction.

### a. Section 504 and the ADA

"No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

"The protections of Title II of the ADA," which contains similar language to that of § 504, "can be greater than, but not less than, the protections afforded by § 504." *R.K. ex rel. J.K. v. Board of Educ. Of Scott Cnty., Ky.*, 494 F. App'x 589, 597 n.8 (6th Cir. 2012) (unpublished); *see* 42 U.S.C. § 12132. "Because the standards under both of the acts are largely the same, cases construing one statute are instructive in construing the other." *Andrews v. State of Ohio*, 104. F.3d 803, 807 (6th Cir. 1997) (citing *Wooten v. Farmland Foods*, 58 F.3d 382, 385 n.2 (8th Cir. 1995)). "Apart from [§504's] limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded—as opposed to 'public'—entities, the reach and requirements of both statutes are precisely the

same." *S.S. v. Eastern Kentucky Univ.*, 532 F.3d 445, 452 (6th Cir. 2008) (quoting *Weixel v. Bd. of Educ. of New York*, 287 F.3d 138, 146 n. 6 (2d Cir. 2002)). Neither of these distinctions between the ADA and § 504 are at issue in this matter, thus, the Court will analyze these claims together to the extent possible. *See id.; see also Thompson v. Williamson Cnty.*, 219 F.3d 555, 557 n.3 (6th Cir. 2000). As noted by the Sixth Circuit, "Title II of the ADA 'shall not be construed to apply a lesser standard than the standards applied under [§ 504] or the regulations issued by Federal agencies pursuant to that [statute].'" *R.K.*, n. 8 (6th Cir. 2012) (quoting 28 C.F.R. § 35.103(a)); *see also* 42 U.S.C. § 12134(b). "[S]atisfaction of the § 504 requirements will also satisfy the requirements of Title II of the ADA." *Id.*

Plaintiff bears the burden to show that (1) [t]he plaintiff is a "handicapped person" under the Act; (2) [t]he plaintiff is "otherwise qualified" for participation in the program; (3) [t]he plaintiff is being excluded from participation in, or being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) [t]he relevant program or activity is receiving Federal financial assistance." *Campbell v. Bd. of Educ. of Centerline Sch. Dist.*, 58 F. App'x 162, 165 (6th Cir. 2003)(unpublished).

The only issue in this case is the third element, whether the school board discriminated against R. K. due to his disability. Certain "discriminatory actions" are prohibited by regulation. Relevant to this case, covered entities may not "[p]rovide different or separate aid, benefits or services to handicapped persons or to any class of handicapped persons unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others." 34 C.F.R. 104.4(b)(iv); *see also* 28 C.F.R. § 35.130(b)(1)(iv).

### 1.  Reasonable Accommodation

Generally speaking, there are two similar, but opposite, considerations at issue. To assure "meaningful access" to its services, a school may have to make reasonable accommodations for students with disabilities. *Trebatoski v. Ashland Sch. Dist.,* 743 F.3d 524, 530 (7th Cir. 2014); *see* 42 U.S.C. § 12131 (2); 34 C.F.R. § 104.33(a). Reasonable accommodations must be made when necessary to avoid discrimination on the basis of disability unless the public entity can demonstrate that the modifications would result in a "fundamental alteration" of the service, program or activity. 28 C.F.R. § 35.130(b)(7); *see McPherson v. Mich. High Sch. Athletic Ass'n, Inc.,* 119 F.3d 453, 461 (6th Cir. 1997). Likewise, a school may not treat a disabled student differently, unless that differential treatment

is shown to be necessary for the individual. 28 C.F.R. §
36.202(c); 34 C.F.R. § 104.4 (b)(1)(iv).

The parties agree on very little, including the nature of
the issue to be addressed by this Court. As this Court sees it,
the issue is whether the Board discriminated against R.K. by
placing him at a location with a full-time nurse rather than his
neighborhood school, which did not have a full-time nurse
present. Plaintiff has argued, at all relevant times, that a
trained layperson at R.K.'s neighborhood school could
sufficiently assist R.K. with the calculation of carbohydrates
and, when necessary, the administration of insulin (through
injection or pump mechanism). Defendant argues that because
R.K. was provided with meaningful access to an education that
was not markedly different from that which R.K. would have
received at his neighborhood school, aside from the physical
location itself, that there was no violation of the ADA or §
504. Indeed, Plaintiff has not pointed to any harm caused by
attending a school other than his neighborhood school, except
for the fact that it was a different school than he would have
attended if he were not disabled.

The Tenth Circuit addressed a student's claim that the "ADA
require[d] the [school] [d]istrict to make whatever 'reasonable
modifications' are necessary to accommodate [the student] at his
neighborhood school and allow[ed] him to reject the placement

assigned to him. . . ." *Urban v. Jefferson Cnty. Sch. Dist.*, 89
F.3d 720, 727 (10th Cir. 1996). Indeed, "[a] public entity may
not deny a qualified individual with a disability the
opportunity to participate in services, programs, or activities
that are not separate or different, despite the existence of
permissibly separate or different programs or activities." 28
C.F.R. § 130(b)(2). The Tenth Circuit found that "section 504
does not require school districts to modify school programs in
order to ensure neighborhood placements." *Urban,* 89 F.3d at
728; *see Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 410—11
(1979) (holding that section 504 does not require affirmative
action to accommodate the disabled); *Barnett v. Fairfax Cnty.
Sch. Bd.*, 927 F.2d 146, 154—55 (4th Cir. 1991) (holding that a
school district need not provide services at a neighborhood
school when such services are available at another central
location); *but see Duvall v. Cnty. Of Kitsap,* 260 F.3d 1124,
1139 (9th Cir. 2001) (public entity is required to undertake a
fact-specific investigation to determine what constitutes a
reasonable accommodation). "[S]ection 504 requires accommodation
in a neighborhood school when disabled children cannot receive
educational benefits without accommodation; it does not require
a school district to modify its program in order to accommodate
a single child in a neighborhood school, especially if that

child is already receiving educational benefits in another environment." *Urban,* 89 F.3d at 728.

Applying the IDEA, ADA, and § 504 in the context of an educational accommodation, the Sixth Circuit noted that "the 'accommodation' designed by the defendant to enable participation by a disadvantaged individual need not be 'fundamental' or 'substantial;' rather it need only be 'reasonable.'" *Campbell v. Bd. of Educ. Of Centerline Sch. Dist.* 58 F. App'x 162, 166 (6th Cir. 2003) (unpublished) (citing *Kaltenberger v. Ohio College of Podiatric Medicine*, 162 F.3d 432, 435 (6th Cir. 1998)). In the educational context, courts must provide deference to "professional academic judgments when evaluating the reasonable accommodation requirement." *Id. (citing Kaltenberger,* 162 F.3d at 436). At issue in Campbell was the school board's offering an existing program to accommodate the educational needs of the student, where the student's parents believed that a different program was more appropriate for the child's particular issues. *Id.* The Sixth Circuit noted that in such a situation, the plaintiffs would be required to prove at trial not only that the program the plaintiffs preferred would constitute a "reasonable accommodation" of the student's needs, but also that the program offered by the defendant school would *not* have been a reasonable accommodation. *Id.* at 166. (analyzing "reasonable

23

accommodation" requirement § 504 "as informed by IDEA"). The student "was entitled *only* to a 'reasonable' public accommodation of his disability, not to the 'best possible' accommodation." *Id.* at 167 (citing *Dong v. Bd. of Educ.*, 197 F.3d 793, 800 (6th Cir. 1999)).

In this case, Plaintiff has failed to create a jury question as to whether the accommodations offered by Defendant were not reasonable. In his affidavit, J.K. stated that he and his wife purchased their home near Eastern Elementary because that is where they wanted to send their children to school. [DE 82-2 at ID# 588]. He went on to state that R.K.'s zoned school, "with his friends, peers, and siblings, is the proper placement." [DE 82-2 at ID# 591]. There is no indication, however, that the Board's decision to enroll R.K. at Anne Mason Elementary, where there was a full-time nurse on duty, was unreasonable. Plaintiff has offered no evidence that R.K.'s educational opportunities were different, that there were transportation difficulties, or that R.K. was somehow negatively impacted by having a nurse administer his diabetes treatments rather than a trained layperson.

Considering that the "principal object of Section 504 is for qualified handicapped individuals to be 'provided with meaningful access to the benefit that the grantee offers,'" when an individual already enjoys "meaningful access" to said

benefit, "no additional accommodation, 'reasonable' or not, need be provided by the grantee." *J.M. v. NYC Dept. of Educ.,* 840 F.Supp.2d 660, 680 (citing *Alexander v. Choate*, 469 U.S. 287, 300 n. 19 (1985)). When alternative reasonable accommodations are already in place, a reasonable accommodations claim under § 504 must fail. *Id.* (citing *Henrietta D. v. Bloomberg,* 331 F.3d 261, 282 (2d Cir. 2003)). It is undisputed that R.K. had meaningful access to all of the benefits that the Board provided to its students.

### 2. Deliberate Indifference

Defendant, citing *Duvall*, argues that R.K. must demonstrate that Defendant acted with deliberate indifference to recover damages under the ADA and § 504 in this matter. [DE 84-1 at 17, ID 902]. R.K. agrees that deliberate indifference is the proper inquiry. [DE 91, ID # 1104]. While this Court previously cited *Duvall* for the proposition that deliberate indifference was the correct standard [DE 39, ID# 341], more recent authority acknowledges that the area of requisite intent for § 504 and ADA is not necessarily settled. *Hill v. Bradley Cnty. Bd. of Educ.*, 295 F. App'x 740, 742 (6th Cir. 2008) (citing *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999)) (accepting the parties' agreement that the deliberate indifference standard applied to § 504 claims, but explicitly not making a finding on the requisite intent). Sixth Circuit

precedent has applied the "bad faith or gross misjudgment" standard, *see Campbell v. Bd. of Educ.*, 58 F. App'x 162, 167 (6th Cir. 2003), as well as the "deliberate indifference" standard, *see Hill v. Bradley*, 295 F. App'x 740 (6th Cir. 2008). *Bishop v. Children's Cntr. for Developmental Enrichment*, No. 2:08-cv-766, 2011 WL 4337088 at *12 (S.D. Ohio 2011) (declining to determine the intent required because the result in that case would be the same under either standard). This Court will mimic the Sixth Circuit in *Hill* and, because the parties in this case agree, apply the lesser deliberate indifference standard here.

"Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood." *Duvall* 260 F.3d at 1139 (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1988)). Plaintiff has failed to demonstrate that a genuine issue of fact exists with respect to this issue. In response to Defendant's argument that there has been no showing of deliberate indifference, Plaintiff devotes its time to describing why its preferred accommodation for R.K. was superior to the one offered, but does not offer any evidence that the accommodation offered was unreasonable or that the Board's actions approached the standard of deliberate indifference.

### 3. Individualized Assessment

Whether the School Board conducted an individualized assessment of R.K.'s needs prior to determining R.K.'s placement is an issue that was not addressed previously. In its opinion in this matter, the Sixth Circuit deemed 34 C.F.R. § 104.35 a "key regulation," but stated that the record was insufficient to determine whether the Board was in compliance. This regulation, however, applies to "any person who, because of handicap, needs or is believed to need special education or related services." 34 C.F.R. § 104.35(a). As R.K. was not in need of special education or related services, most of the assessment factors listed in 34 § 104.35(c) were not applicable. It is clear from the current record, however, that each time the 504 Committee met, they did "draw upon information from a variety of sources." *Id.* At each 504 meeting, medical evidence was considered and R.K.'s parent was present, providing input as to R.K.'s abilities with respect to his diabetes care. For instance, prior to the first 504 meeting, the Board had received the Preventative Health Care Examination Form from R.K.'s physician, which specifically stated that R.K. would require a nurse to help with insulin administration. [DE 84-6 at ID# 1166]. J.K. complained that the Board did not seek out further medical records at that time, but at least one of R.K.'s parents was at the 504 meeting. There is no evidence, however, that they

provided any further medical documentation to the Board at that time, although J.K.'s affidavit reflects that he discussed R.K.'s condition and level of independence with the Committee. Based on the record, the same appears to be true of the subsequent 504 meetings. Medical records were considered and at least one of R.K.'s parents were present. [*See e.g.* 84-10, 84-12, 84-13, 84-15, 84-18]. Based on the record before the Court, there is no question that the Board conducted an individualized assessment each time the 504 Committee met to discuss R.K.'s plan. Accordingly, Plaintiff's motions for summary judgment on its claims under the Rehabilitation Act and the ADA will be denied and Defendant's will be granted.

### b. Due Process and Equal Protection

Defendant is entitled to summary judgment on Plaintiff's due process claim for the same reasons stated in this Court's Memorandum Opinion and Order of December 15, 2010. There is no allegation that Defendant prevented R.K. from attending school or that he was precluded from pursuing any administrative remedies available to him in determining an appropriate § 504 plan. *See Collyer v. Darling,* 98 F.3d 211, 233 (6th Cir. 1996). In fact, Plaintiff fails to address this portion of the Board's motion for summary judgment in both its response and reply memoranda.

Disabled individuals, as a class, are protected by the Equal Protection Clause of the Fourteenth Amendment. *Stevens v. Illinois Dept. of Trans.,* 210 F.3d 732, 737 (7th Cir. 2000) (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 446 (1985)). The Fourteenth Amendment permits states to single out disabled persons for different treatment, however, so long as it has rational or legitimate purposes. *See Cleburne,* 473 U.S. 446-47. The individual challenging the constitutionality of the state's decision bears the burden of negating "any reasonably conceivable state of facts that could provide a rational basis" for the state's actions. *Bright v. Gallia Cnty., Ohio* 753 F.3d 639, 655-56 (6th Cir. 2014) (quoting *Bd. of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 367 (2001)). While Plaintiff claims that he was treated unfairly, he does not seem to claim that Defendant's actions lacked a rational basis. In fact, Plaintiff has failed to respond to Defendant's equal protection argument entirely. Additionally, it is evident from the briefing that the Board's stated reasons for requiring R.K. to attend a school with a nurse on site meet the low threshold for rational-basis review. Accordingly, Defendant's motion for summary judgment will be granted with respect to the Fourteenth Amendment claims brought pursuant to 42 U.S.C. § 1983.

### c. Kentucky Civil Rights Act

Defendant urges the Court to grant summary judgment in its favor as to Plaintiff's claim under the Kentucky Civil Rights Act based on its claim that the school district is not a place of public accommodation under KRS 344.130. As common sense would dictate, however, the school itself is the place of public accommodation—not the school board. *K.M. v. Fayette Cnty. Public Sch.,* 2003 WL 21771952, at *4 (Ky. Ct. App. Aug. 1, 2003). While federal courts owe no deference to a state court's interpretation of federal law, we must defer to the Kentucky Court of Appeals' interpretation of the Kentucky statute at issue. *See United States v. Miami Univ.,* 294 F.3d 797, 811 (6th Cir. 2002). Defendant's motion for summary judgment as to this claim will be denied.

Accordingly, **IT IS HEREBY ORDERED:**

1) that Plaintiff's motion for summary judgment, [DE 81], is **DENIED;**

2) that Defendant's motion for summary judgment, [DE 84], is **GRANTED** with respect to Plaintiff's claims under Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, and the Fourteenth Amendment of the United States Constitution;

3) that Defendant's motion for summary judgment, [DE 84] is **DENIED** with respect to Plaintiff's claim under the Kentucky Civil Rights Act.

This the 28th day of August, 2014.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge